UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NORTH FOREST DEVELOPMENT, LLC       **REPORT, RECOMMENDATION AND ORDER**

                        Plaintiff,

v.                                           06-CV-00378(A)(M)

WALDEN AVENUE REALTY ASSOCIATES, LLC,
BURGIO AND COMPOFELICE, INC., AND
ROBERTS, SHACKLETON & BOY ARCHITECTS
& ENGINEERS, P.C.,
                      Defendants.

_____

        This case was referred to me by Hon. Richard J. Arcara for supervision of pretrial proceedings, including preparation of a report and recommendation on dispositive motions [24].[1] Before me are motions for summary judgment by plaintiff North Forest Development, LLC ("North Forest") and defendants Walden Avenue Associates, LLC and Burgio and Compofelice, Inc. (collectively "Walden") [81, 84]. Defendant Roberts, Shackleton & Boy Architects & Engineers, P.C. was previously dismissed from the case [69, 72].

        For the following reasons, I recommend that Walden's motion [81] be GRANTED in part and DENIED in part, and that North Forest's motion [84] be DENIED. Furthermore, the parties are ORDERED to show cause on or before August 21, 2009 why all or portions of the documents which were filed under seal in connection with these motions should not be unsealed.

---

[1]     Bracketed references are to CM/ECF docket entries.

**BACKGROUND**

In its Second Amended Complaint [35], [2] North Forest alleges that it has obtained numerous copyright registrations for architectural designs (id., ¶9), that its designs contain "certain original configurations and arrangement and composition of spaces and elements" which "separate[ ] North Forest's designs from previously known configurations" (id., ¶14), and that Walden has infringed its copyrights (id., ¶15). Although North Forest originally asserted both copyright and trademark claims, the parties have stipulated [94] to the withdrawal of the trademark claims and related affirmative defenses, leaving only the copyright claims at issue.

The designs at issue on these motions relate to interior office layouts.[3] Although they were initially submitted as "architectural works", the Copyright Office advised North Forest that they would not qualify for protection as "architectural works" because they did not depict an entire building [81-4, Ex. F]. Therefore, North Forest registered the works as "technical drawings" instead. Czajka deposition [81-4, Ex. H], p. 9.

Walden seeks summary judgment determining that North Forest is not the owner of the copyrights, that it did not infringe North Forest's copyrights in any event, and that it is entitled to an award of attorney's fees pursuant to 17 U.S.C. §505. North Forest seeks partial summary

---

[2] Although the document is entitled "Third Amended Complaint", the parties agree that it is actually the Second Amended Complaint, and it has been docketed as such.

[3] At his deposition, North Forest's principal, Roy Jordan, also testified that Walden infringed North Forest's "outside door and window layout of the whole building and the unitized door and window layout". [81-4], Ex. I, p. 49. However, North Forest has not argued that similarity in opposing Walden's motion, nor does the record contain depictions of Walden's door and window layout from which a comparison could be made. Therefore, I conclude that this claim of infringement has been abandoned.

judgment determining that it owns valid copyrights and that Walden copied its designs (although it does not seek summary judgment determining that infringement occurred).

## DISCUSSION AND ANALYSIS

**1.      Standard for Summary Judgment**

The standard to be applied on a motion for summary judgment in this Circuit is well settled.  " 'Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists.  In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant[.]  Summary judgment is improper if there is any evidence in the record that could reasonably support the jury's verdict for the non-moving party.' "  Ford v. Reynolds, 316 F. 3d 351, 354 (2d Cir. 2003).

However, while the moving party must demonstrate the absence of any genuine factual dispute, the party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . The nonmoving party must come forward with specific facts showing that there is a genuine issue for trial."  Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

**2.	Ownership of the Copyrights**

"To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340, 361 (1991).

Walden argues that because the copyrighted drawings were actually prepared by Glynn Geotechnical Engineering ("GGE"), rather than by North Forest, North Forest does not own the copyrights, and therefore may not maintain this action. Walden's Memorandum of Law [81-5], pp. 18-20. North Forest counters that it "provided the architect with full drawings and dimensions . . . [with] the instruction . . . to simply convert the drawings into formal layouts for permit approval". North Forest's Memorandum of Law [96], p. 15; Jordan deposition [81-4, Ex. I], p. 29; Glynn Affidavit [99], ¶¶ 4, 5 ("the CAD drawings were based on informal drawings, dimensions, and other specific information provided to me by Roy Jordan, who is the managing member of North Forest. The personal and creative selection, arrangement, and composition of the office space layouts . . . were wholly provided by Roy Jordan").

"The Copyright Act of 1976 provides that copyright ownership 'vests initially in the author or authors of the work.' 17 U.S.C. §201(a). As a general rule, the author is the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737 (1989). North Forest argues that, having created the original drawings, it is the "author" entitled to ownership of the copyrights: "a party can be considered an author when his or her expression of an idea is transposed by mechanical or rote transcription into tangible form under the authority of the

party". North Forest's Memorandum of Law [98], p. 8 (*quoting* Andrien v. Southern Ocean County Chamber of Commerce, 927 F. 2d 132, 135 (3rd Cir. 1991)).

Andrien cautions, however, that "when one authorizes embodiment, that process must be rote or mechanical transcription that does not require intellectual modification *or highly technical enhancement such as . . . architectural drawings*". Id. (emphasis added). For example, in Zitz v. Pereira, 119 F. Supp. 2d 133, 145 (E.D.N.Y. 1999), the court concluded that the plaintiff was not the true author of the copyrighted floor plans, notwithstanding the fact that he provided the architect with his own drawings:

> "Zitz's floor plans for Townhouse I provide only the most basic of specifications as far as the size and layout of the inside of the house . . . .While Zitz' plans for Townhouse II contain more detail than Zitz's Townhouse I plan . . . the fact remains that Zitz did not have the expertise, as well as the authority, to prepare plans required by the Town in support of an application for a building permit . . . . Zitz did not file his own sketches of the floor plans for Townhouses I & II with the Copyright Office. Instead, he filed the plans prepared by Erickson and Tully, which Zitz did not prepare. I therefore conclude that Zitz did not author the architectural plans deposited with the Copyright Office, that he deliberately misrepresented the true facts to the Copyright Office, and that the defendants have successfully rebutted the presumption of validity embodied in the registration of technical drawings of Townhouses I & II".

I note that Zitz was decided following a bench trial, not on a motion for summary judgment. Based on the record before me, I cannot determine as a matter of law whether North Forest is or is not the author of the copyrighted drawings. For example, since Mr. Jordan's original drawings are not in the record, I cannot compare them with the GGE drawings to determine whether GGE merely copied the drawings supplied by Mr. Jordan or added creative details. Moreover, Mr. Glynn's affidavit [99, ¶7] does not rule out the possibility "that GGE provided any original creative

contribution that could be considered significant enough to consider GGE an author or owner of the works".

However, even if North Forest *is* the owner of the copyrights, this action may proceed to trial only if a "reasonable jury, properly instructed, could find that the . . . works are substantially similar". Kregos v. Associated Press, 3 F. 3d 656, 663 (2d Cir. 1993), cert. denied, 510 U.S. 1112 (1994).


**3.     Standard for Copyright Infringement**

North Forest argues that Walden has "admitted to obtaining North Forest's plans and marketing materials and copying them to create their infringing office layouts". North Forest's Memorandum of Law [84-2], p. 12. "Not all copying, however, is copyright infringement. To establish infringement, [plaintiff must prove] . . . copying of constituent elements of the work that are original." Feist, supra, 499 U.S. at 361.

While "plaintiffs' certificates of registration constitute prima facie evidence of the validity not only of their copyrights, but also of the originality of their works", Boisson v. Banian, Ltd., 273 F. 3d 262, 268 (2d Cir. 2001), it does not follow that *all* aspects of those works are entitled to copyright protection. "Simply because a work is copyrighted does not mean every element of that work is protected." Id.; Feist, supra, 399 U.S. at 348 ("the mere fact that a work is copyrighted does not mean that every element of the work may be protected. Originality remains the *sine qua non* of copyright; accordingly, copyright protection may extend only to those components of a work that are original to the author").

Although copyright protection may extend to "the overall form as well as the arrangement and composition of spaces and elements in the design" of a building, it "does not include individual standard features". 17 U.S.C. §101. Thus, no protection is afforded for "standard configuration of spaces, and individual standard features such as windows, doors and other staple building components, as well as functional elements whose design or placement is dictated by utilitarian concerns". Copyright Circular 41 [81-4, Ex. G]; 37 C.F.R. §202.11.

Accordingly, North Forest "is not claiming copyright protection to standard features such as windows or doors, but rather is claiming the composition, selection, and arrangement of space and elements within a building" (North Forest's Memorandum of Law [84-2], p. 17); *i.e.*, "the original compilation, configuration, selection, and arrangement of . . . standard elements and features that cannot be protected individually". Jordan Affidavit [84-8], ¶35. Since it claims originality not in the components themselves, but rather in their arrangement, the level of protection afforded by its copyrights is "thin". "Thin copyright protection is appropriate where works reflect scant creativity . . . . Scantiness may exist because the work is composed of elements in the public domain, and it is only the organization of those elements that is protectible." Well-Made Toy Mfg. Corp. v. Goffa International Corp. 210 F. Supp. 2d 147, 163 (E.D.N.Y. 2002), aff'd, 354 F. 3d 112 (2d Cir. 2003).[4]

"Where the quantum of originality is slight and the resulting copyright is thin, infringement will be established only by very close copying." Beaudin v. Ben & Jerry's

---

[4] North Forest argues that Walden is "precluded from stating the works incorporate any elements of the public domain or otherwise contain unprotectable elements because of their failure to disclose any such information during discovery". North Forest's Reply Brief [98], p. 5, n. 2. I disagree. As already noted, North Forest itself admits that its works contain standard (and therefore unprotectible) elements, and claims protection only for the arrangement of those elements.

Homemade, Inc., 95 F. 3d 1, 2 (2d Cir.1996); Tufenkian, supra, 338 F. 3d at 135, n. 11; Apple Computer, Inc. v. Microsoft Corp., 35 F. 3d 1435, 1439 (9th Cir. 1994), cert. denied, 513 U.S. 1184 (1995) ("when the range of protectable and unauthorized expression is narrow, the appropriate standard for illicit copying is virtual identity").

North Forest argues that infringement must be determined "by reviewing the 'total concept and feel' [of the works at issue] from the perspective of an ordinary observer". North Forest's Memorandum of Law [96], p. 6 (*citing* Shine v. Childs, 382 F. Supp. 2d 602, 614 (S.D.N.Y. 2005). However, "our Circuit [has] refined the ordinary observer test in cases where certain aspects of the copyrighted work are taken directly from the public domain, and applied a 'more discerning' ordinary observer test. What must be shown is substantial similarity between those elements, and only those elements, that provide copyrightability." Shine, supra, 382 F. Supp. 2d at 615.

Thus, "where a design contains both protectible and unprotectible elements . . . the observer's inspection must . . . ignor[e] those aspects of a work that are unprotectible in making the comparison". Laureyssens v. Idea Group, Inc., 964 F. 2d 131, 141 (2d Cir. 1992). "The court, confronted with an allegedly infringing work, must analyze the two works closely to figure out in what respects, if any, they are similar, and then determine whether these similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking." Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc., 338 F. 3d 127, 134-35 (2d Cir. 2003). "The court's substantial similarity analysis ultimately should be guided by common sense." Shine, supra, 382 F. Supp. 2d at 615; Boisson, supra, 273 F. 3d at 273.

**4.      Infringement Analysis**

North Forest asks me to compare its single, double, unit-and-a-half, and half-unit layouts (shown in Jordan Affidavit [84-8], Ex. A-D) with Walden's office space layouts (shown in Oropallo Declaration [84-5], Ex. O and P). North Forest's Memorandum of Law [84-2], p. 17. North Forest argues that "the similarities are striking" and that Walden has "misappropriated the total look and feel of the North Forest copyrighted Works". Id. It points to the "similarity in dimensions that enable a more efficient office space" and "the copying of an innovative configuration for the centralized utilities/kitchen/lavatory area with outlining office spaces and other elements". North Forest's Memorandum of Law [96], p. 6.

However, the notion of placing lavatories, kitchens and utilities in the center area, with offices along the outer walls, can hardly be considered unique to North Forest. As noted by Walden, the placement of "mechanicals and plumbing close to the center of the buildings [is] a standard construction design", Myszka Affidavit [81-7], ¶30, and it stands to reason that kitchens, utilities and lavatories would be placed in close proximity thereto. "Standard configurations of spaces" are not entitled to copyright protection. 37 C.F.R. §202.11(d)(2). "Generalized notions of where to place functional elements . . . are 'ideas' that may be taken and utilized . . . without violating the copyright." Attia v. Society of the New York Hospital, 201 F. 3d 50, 55 (2d Cir. 1999), cert. denied, 531 U.S. 843 (2000).

Having compared North Forest's and Walden's floor plans, I conclude that no properly instructed jury could reasonably find that similarities exist, other than at the most superficial and unprotectible level. Although "at first glance the floor plans and the overall layout is generally the same",[5] Home Design Services, Inc. v. David Weekley Homes, LLC, 548 F. Supp. 2d 1306, 1313 (M.D. Fla. 2008), "there are only a finite number of ways a rectangle can be divided . . . . In architectural plans of this type, modest dissimilarities are more significant than they may be in other types of art works." Id.. *See also* Howard v. Sterchi, 974 F. 2d 1272, 1276 (11th Cir. 1992); Well-Made Toy, supra, 210 F. Supp. 2d at 163 ("differences become particularly important where copyright protection is thin").

Set forth below is a non-exhaustive list of dissimilarities between North Forest's and Walden's layouts:

**SINGLE UNIT**

| Areas | North Forest<br>[84-8, Ex. A] | Walden<br>[84-5, Ex. O, P] |
|---|---|---|
| **General** | • Five enclosed offices | • Four enclosed offices |
| **Left** | • Top office door opens right<br><br>• No windows on left wall<br><br>• Top hallway and entrances oriented 45º counterclockwise | • Top office door opens left<br><br>• Two windows on left wall<br><br>• All entrances parallel to centerlines |

---

[5] This is true only as to the single and double unit layouts. There is not even a superficial similarity between Walden's layouts and North Forest's half-unit [84-8, Ex. D] and unit-and-a-half [84-8, Ex. C] layouts.

| Right | • Small foyer | • Large open reception area |
|---|---|---|
| | • Kitchenette below bathroom | • Kitchenette above bathroom |
| | • Bathroom door opens out | • Bathroom door opens in |
| | • Mechanical Room length up-down | • Mechanical Room length left-right |
| | • Closet | • Closet |
| |    - Sliding door |    - Swinging door |
| |    - Length orientation up-down |    - Length orientation left-right |
| | • File areas above reception | • No designated file area |
| | • Top hallway and entrances oriented 45º clockwise | • All entrances parallel to centerlines |
| | • Top office and bathroom contiguous | • Hall between top office and kitchenette |

**DOUBLE UNIT**

| Areas | North Forest<br>[84-8, Ex. B] | Walden<br>[84-5, Ex. O, P] |
|---|---|---|
| General | • Near exact symmetry across top-down centerline | • Less global symmetry |
| | • Sixteen enclosed rooms | • Seventeen enclosed rooms |
| | • Central island split in two | • Contiguous central island |

|  |  |  |  |
|---|---|---|---|
| **Left** | • Bottom corner office length dimension aligned up-down | | • Bottom corner space length dimension aligned left-right |
| | • Four enclosed rooms | | • Three enclosed rooms |
| | • Conference room space | | • No conference room (see Right Side) |
| | • Top corner office | | • Top corner office |
| |     - Door swings right | |     - Door swings left |
| |     - One window | |     - Two windows |
| | • No windows facing left | | • Two windows facing left |
| | • Top hallway and entrances oriented 45º counterclockwise | | • All entrances parallel to centerlines |
| **Center** | • Entrances lead into shared foyer | | • Suite 101 entrance leads into enclosed vestibule; Suite 102 entrance leads into reception area |
| | • Closets | | • Closets |
| |     - Two; one per side of vertical centerline | |     - One in Suite 102 |
| |     - Sliding doors | |     - Fold out door |
| | • Bathrooms | | • Bathrooms |
| |     - Doors open out | |     - Doors open in |
| |     - Toilet centerline left-right | |     - Toilet centerline up-down |
| | • Mechanical rooms length up-down | | • Mechanical rooms length left-right |
| | • File space in open reception area | | • Enclosed file room |
| | • Connecting walkway/kitchenette between central area | | • Connecting walkway above central area |
| **Right** | • Four enclosed rooms | | • Five enclosed rooms |
| | • Top corner office door opens left | | • Top corner office door opens right |

"Historically summary judgment has been withheld in copyright cases because courts have been reluctant to make subjective determinations regarding the similarity between two works . . . . However, a court may determine non-infringement as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Williamson v. Pearson Education, Inc., 2001 WL 1262964, *3 (S.D.N.Y. 2001); Flaherty v. Filardi, 2009 WL 749570, *3 (S.D.N.Y. 2009) ("summary judgment is appropriate . . . where the relevant similarity concerns only non-copyrightable elements of Plaintiff's work or if no reasonable factfinder could find the works substantially similar").

Where (as here) the plaintiff's copyright is "thin", a finding of infringement must be predicated upon "very close copying" or "virtual identity". Beaudin, supra, Apple Computer, supra. Since I conclude that no reasonable jury could make that finding based upon the record in this case, I recommend that Walden's motion for summary judgment of non-infringement be granted.

**5.     Attorney's Fees**

Walden also seeks an award of attorney's fees pursuant to 17 U.S.C. §505. An award of such fees is discretionary, not mandatory. "Prevailing plaintiffs and prevailing defendants are to be treated alike, but attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. There is no precise rule or formula for making these determinations." Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 (1994). The "objective reasonableness [of the losing party's position] is a factor that should be given substantial weight in determining whether an award of

attorneys' fees is warranted". Matthew Bender & Co. v. West Publishing Co., 240 F. 3d 116, 122 (2d Cir. 2001).

Walden argues that North Forest's position is objectively unreasonable because (1) it had only registered technical drawings rather than architectural works, (2) it had no formal contract with GGE (which actually prepared the drawings), (3) had discontinued its claim against Walden's architects, and (4) there was no substantial similarity between North Forest's and Walden's designs. Walden's Memorandum of Law [81-5], p. 22.

I disagree. Technical drawings as well as architectural works are copyrightable. Attia, supra, 201 F. 3d at 53, n. 3. The fact that GGE prepared the drawings which were actually submitted to the Copyright Office does not foreclose the possibility that those drawings were based upon drawings prepared by North Forest, thereby entitling North Forest to the copyrights. Andrien, supra. The fact that North Forest discontinued its claim against Walden's architects was based on its recognition (following discovery) that the architects "did not provide any assistance in creating the allegedly infringing designs or buildings, but rather acted as a scribe by converting the sketches [obtained from Walden]". Joint Attorney Declaration [52-2], ¶9.

Finally, the fact I have recommended summary judgment of non-infringement does not necessarily mandate an award of attorney's fees. For example, while there are many dissimilarities between North Forest's and Walden's layouts, there are also certain similarities, and there is also at least some evidence of copying by Walden. *See* North Forest' Memorandum of Law [84-2], pp. 12-13.

Therefore, notwithstanding my recommendation as to summary judgment, I conclude that North Forest's assertion of a claim for copyright infringement was not objectively

unreasonable. *See* Silberstein v. Fox Entertainment Group, Inc. 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) ("while finding as a matter of law that there was no substantial similarity, the court does not consider plaintiff's claim to be patently devoid of merit. The existence of limited similarities . . . persuades the Court that plaintiff's claims were not specious or objectively unreasonable"); Williamson, supra, 2001 WL 1262964 at *11 ("although plaintiff's claims cannot withstand a motion for summary judgment, the claims are neither frivolous nor objectively unreasonable . . . . As a result, the Court denies defendants' motion for attorney's fees"); CK Co. v. Burger King Corp., 1995 WL 29488, *1 (S.D.N.Y. 1995), aff'd, 122 F. 3d 1055 (2d Cir. 1995) ("plaintiff at bar suffered summary judgment because this Court concluded that there were no close similarities between protectable elements of the works. But I am not prepared to say that plaintiff's contrary arguments were objectively unreasonable. To hold otherwise would establish a per se entitlement to attorney's fees whenever those issues are resolved against a copyright plaintiff. I do not think that is a correct construction of the law").

Accordingly, I recommend that Walden's request for an award of attorney's fees be denied.

**6.    Documents Filed Under Seal**

In connection with these motions, the parties have filed several documents under seal, presumably in accordance with paragraph 10 of the Stipulated Protective Order [47], which provides that "all documents . . . which contain information that has been designated 'CONFIDENTIAL' or 'HIGHLY CONFIDENTIAL - COUNSEL ONLY' or which contain

Confidential or Highly Confidential Discovery Material, which are filed with the Court shall be filed under seal".

While I recognize that the Stipulated Protective Order can be read as requiring the entire document containing confidential information to be filed under seal, I believe that it should more properly be interpreted to require (and allow) only those portions of the documents which are truly confidential to be filed under seal, since it is well settled that "the public has a common-law right of access to judicial records". DiRussa v. Dean Witter Reynolds Inc., 121 F. 3d 818, 826 (2d Cir. 1997), cert. denied, 522 U.S. 1049 (1998). The presumption of access "is at its strongest when the document in question, as here, has been submitted as a basis for judicial decision making". United States ex rel. Alcohol Foundation, Inc. v. Kalmanovitz Charitable Foundation, Inc., 186 F. Supp. 2d 458, 465 (S.D.N.Y. 2002), aff'd, 53 Fed. Appx. 153 (2d Cir. 2002), cert. denied, 540 U.S. 949 (2003).

Many of the documents filed under seal do not appear to be confidential. For example, the need to file entire deposition transcripts under seal (*e. g.,* [81-4, Ex. N], [84-5, Ex. B, D, F]) is not readily apparent to me. *See* Cardiac Pacemakers, Inc. v. St. Jude Medical, Inc., 2007 WL 141923, *1 (S.D. Ind. 2007) ("Why would [the] entire deposition need to be filed under seal? . . . . Presumably one party's counsel marked [the] deposition as 'confidential' under the protective order, making opposing counsel reluctant to file any portion of the deposition (or in this case, the entire deposition) unless under seal. Even if this is what occurred, marking a document 'confidential' does not mean that opposing counsel is stuck with this designation for the life of the case and must thereafter blindly seek to have any such document filed under seal. Rather, counsel

has an obligation to discuss whether a document marked 'confidential' is truly deserving of this continued designation once the document needs to be filed with the Court.")

Since the Stipulated Protective Order could be interpreted as requiring the entire documents (rather than just the confidential portions thereof) to be filed under seal, I do not mean to suggest that the parties the parties acted improperly in doing so. However, consistent with the public's interest in unfettered access to non-confidential judicial documents, I am ordering the parties to show cause in writing, on or before August 21, 2009, why the documents (or portions thereof ) which were filed under seal in connection with these motions should not be unsealed.

## CONCLUSION

For these reasons, I recommend that Walden's motion for summary judgment [81] be GRANTED to the extent of determining non infringement as a matter of law and dismissing the Second Amended Complaint, with prejudice, but that it be otherwise DENIED, and that North Forest's motion for partial summary judgment [84] be DENIED. Furthermore, the parties are hereby ordered to show cause in writing, on or before August 21, 2009, why the documents (or portions thereof) which were filed under seal in connection with these motions should not be unsealed.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

ORDERED, that this Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72.3(a)(3).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); Wesolek v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning objections to a Magistrate Judge's Report, Recommendation and Order), may result in the District Judge's refusal to consider the objection.

**SO ORDERED.**

DATED: July 22, 2009

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge